J-A28019-24

2025 PA Super 144

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RYAN SASSANY | : | |
| | : | |
| Appellant | : | No. 2198 EDA 2023 |

Appeal from the Order Entered August 15, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: MC-51-CR-0000218-2023

BEFORE: PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

OPINION BY STABILE, J.:                                    **FILED JULY 14, 2025**

Appellant, Ryan Sassany, appeals from the August 15, 2023, order of the Philadelphia County Court of Common Pleas denying his petition for a writ of certiorari. The Philadelphia County Municipal Court found Appellant guilty of abuse of a care-dependent person under 18 Pa.C.S.A. § 2713.1(a)(1)(ii) and imposed time served to twelve months of incarceration. We affirm.

The trial court recited the following facts in its Pa.R.A.P. 1925(a) opinion:

> At the March 2, 2023 Municipal Court trial, the following facts were established. The complainant, Yvonne Grauwickel ("Grauwickel") testified that she resides at 1847 Frankford Avenue, Philadelphia with Sassany, her son. During this time she was very sick and spent most of her day in a chair and Sassany assisted her with daily needs including going to the store. She testified that during the day, he would do things to aggravate her, such as opening doors, turning on lights or turning on appliances in the kitchen when she was 'so sick.' She testified that the police had come to the home on prior occasions and would tell Sassany to take a walk or other measures to diffuse the situation.

On January 4, 2023, [Appellant] came home at about 4:30 p.m. and began mopping the floor. Grauwickel testified that while doing so, an upstairs neighbor called the police, reporting that [Appellant] held a knife to Grauwickel's throat. Grauwickel denied that [Appellant] held a knife to her throat. On January 4, 2023, Grauwickel made a call to 911 regarding [Appellant] which was played at trial. Grauwickel did not remember making the call but recognized her voice in the recording. The Honorable David Shuter listened to the 911 call and heard Grauwickel say [Appellant] was turning on and off the lights and blowing his nose on her.

Officer Branden Hertzog testified that on January 4, 2023, he went to Grauwickel's home on two separate occasions after receiving 911 calls for domestic incidents. During the first investigation, [Appellant] was not present and Hertzog interviewed Grauwickel who related that there was a verbal dispute with [Appellant]. Roughly an hour later, Hertzog received a second call about a domestic dispute involving a weapon. Hertzog again went to the home and spoke with Grauwickel. [Appellant] was present during this time. Grauwickel appeared upset, distraught and was acting fearful and tearful. She directed Hertzog to take [Appellant] out of the house and stated that she needed help. The Commonwealth played a video from Hertzog's body-worn camera of the interview with Grauwickel. In the video, Grauwickel is heard saying that [Appellant] 'threatened her with a knife and I called the police.' Hertzog testified that a witness had observed a knife that was on a TV tray in the living room, but he did not recover the knife or put it into evidence.

[Appellant] testified that he lived with his mother, Grauwickel, and helps her out with cooking, cleaning, doing chores around the house and running errands. On January 4, 2023, he left the house at 10:00 a.m. and came back around 5:30 p.m. The police officers took him to the police vehicle and placed him in the back seat. [Appellant] denied threatening Grauwickel, attempting to hurt her, or threatening her with a knife. There was a stipulation to his character that he is a law-abiding and a non-violent person.

Trial Court Opinion, 1/23/24, at 2-4 (record citations omitted). On March 2, 2023, the Philadelphia County Municipal Court found Appellant guilty of abuse

of a care-dependent person as set forth above. Appellant sought review in the Court of Common Pleas by writ of certiorari.[1] The Philadelphia Court of Common Pleas denied certiorari on August 15, 2023, and Appellant filed this timely appeal on August 24, 2023.

The question before us is whether the Commonwealth presented sufficient evidence that Appellant was Grauwickel's "caretaker" within the meaning of 18 Pa.C.S.A. § 2713.1. Appellant's Brief at 3. Our standard of review is well-settled:

> Our standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to enable the fact[-]finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.
>
> In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence…. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

---

[1] Pa. Const. Art. V § 26; 42 Pa.C.S.A. § 934. A petition for a writ of certiorari asks the Court of Common Pleas to review the municipal court record, whereas an appeal for a trial *de novo* provides the defendant a new trial without reference to the municipal court record. **Commonwealth v. Speights**, 509 A.2d 1263, 1264 n.2 (Pa. Super. 1986). A petition for a writ of certiorari is an appropriate means of seeking review of the sufficiency of the evidence presented before the municipal court. ***Id.***

*Commonwealth v. Pledger*, 332 A.3d 29, 34 (Pa. Super. 2024) (citations omitted).

Appellant was convicted under 18 Pa.C.S.A. § 2713.1(a)(1)(ii), which provides as follows:

> **(a) Offense defined.--**A caretaker is guilty of abuse of a care-dependent person if the caretaker:
>
> (1) With the intent to harass, annoy or alarm a care-dependent person:
>
> […]
>
> (ii) engages in a course of conduct or repeatedly commits acts that serve no legitimate purpose;

18 Pa.C.S.A. § 2713.1(a)(1)(ii). Section 2713.1(e) refers to § 2713(f) for the definition of caretaker and care-dependent person:

> "Care-dependent person." Any adult who, due to physical or cognitive disability or impairment, requires assistance to meet his needs for food, shelter, clothing, personal care or health care.
>
> "Caretaker." Any person who:
>
> […]
>
> (4) is an adult who resides with a care-dependent person and who has a legal duty to provide care or who has voluntarily assumed an obligation to provide care because of a familial relationship, contract or court order; or

18 Pa.C.S.A. § 2713(f).

The trial court found that Appellant resides with and voluntarily assumed a duty to care for his mother, as per subsection (4) of the definition of

caretaker in § 2713(f).[2] In support of its finding that Appellant was Grauwickel's caretaker,[3] the trial court noted that Appellant is Grauwickel's son, and that he voluntarily helps her with household chores and running errands. Grauwickel, for her part, spends most of her day confined to a chair. Trial Court Opinion, 1/23/24, at 10-11. Appellant argues that the trial court relied upon facts insufficient to support a finding that he "voluntarily assumed an obligation" to provide care for Grauwickel. Appellant argues that the statutory definition of "caretaker" is unambiguous insofar as it requires a voluntary assumption of an obligation, and that a mother-son relationship by itself is insufficient. According to Appellant, "[t]he record discloses only that, when [Appellant] has the capacity, he will acquiesce to his mother's request to complete a chore or errand." Appellant's Brief at 17.

Appellant's argument omits some critical facts and ignores the applicable standard of review. The record reflects more than a son occasionally doing chores or running errands for his mother. Rather, the record reflects that Appellant lives with his elderly mother who is physically

---

[2] Appellant disputes that he is Grauwickel's caretaker and that she is care-dependent. He does not dispute the findings that his conduct meets the definition of abuse in § 2713.1(a)(1)(ii).

[3] The trial court noted that this is not the same claim Appellant raised in his writ of certiorari or at argument before the court. Trial Court Opinion, 1/23/24, at 10 n.8. Rather, Appellant argues that the evidence was insufficient to support a finding that he acted with the intent to harass, annoy, or alarm, as per § 2713.1(a)(1). But because the trial court's opinion addresses the issue Appellant raises on appeal, we will reach the merits.

confined to a chair most of the time. N.T. Trial, 3/2/23, at 11. Thus, she is accustomed to relying on Appellant for many daily needs, including cooking, cleaning, taking out the trash, and running to the grocery and drug stores. *Id.* at 11-12, 35. Appellant voluntarily resides with Grauwickel—he has done so since May of 2012. *Id.* at 35. And he voluntarily performs the tasks explained just above. *Id.* Drawing reasonable inferences in the Commonwealth's favor, as we must, these facts are sufficient to establish that Appellant voluntarily assumed a duty to care for Grauwickel.

Appellant also argues that Grauwickel does not meet the definition of a care-dependent person under § 2713(f). As quoted above, a care-dependent person is one who "due to physical or cognitive disability or impairment, requires assistance to meet his needs for food, shelter, clothing, personal care or health care." 18 Pa.C.S.A. § 2713(f). Again, Appellant would have us ignore critical facts and the inferences to be drawn from them. Because the instant record reflects that Grauwickel spends most of her day in a chair, relying on Appellant to cook, clean, and go to the supermarket and drug store for her, it is reasonable to infer that she is a care-dependent person.

Appellant would have us reach a contrary conclusion because Grauwickel testified that Appellant helps her "if he's in right frame of mind." *Id.* at 12. Appellant argues from this that Grauwickel must have been taking care of herself when Appellant was not in the right frame of mind. Appellant's Brief at 17. This argument ignores the fact that Appellant was on trial for his

alleged abuse of a care-dependent person. Indeed, Grauwickel's reference to Appellant's frame of mind commenced a line of questioning about the 911 call Grauwickel placed on January 4, 2023, regarding Appellant's abusive behavior. N.T. 3/2/23, at 12. It is reasonable to infer, therefore, that Grauwickel's reference to Appellant's frame of mind was a reference to the times when he was abusive rather than helpful. It is unreasonable to infer from those few words that she was not a care-dependent person. Again, Appellant's argument invites us to ignore the applicable standard of review

For the foregoing reasons, we conclude that the record contains sufficient evidence that Grauwickel was a care-dependent person and that Appellant voluntarily assumed a duty to care for her. Appellant's arguments to the contrary lack merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/14/2025